**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JOSHUA DAVIS**                                                    **CIVIL ACTION**

**VERSUS**                                                          **CASE NO. 24-784**

**JANTRAN, INC.**                                                   **SECTION: "G"**


### ORDER AND REASONS

This litigation involves alleged injuries suffered by Plaintiff Joshua Davis ("Plaintiff") upon a vessel.[1] Before the Court is Defendant Jantran, Inc.'s ("Defendant") Motion in Limine.[2] In the motion, Defendant seeks to exclude certain opinions and anticipated trial testimony of Captain John R. Sutton ("Captain Sutton"), Plaintiff's marine operations and liability expert.[3] Plaintiff opposes the motion.[4] Considering the motion, the opposition, the reply memorandum, the record, and the applicable law the Court grants the motion in part and denies the motion in part. The Court excludes Captain Sutton's opinions to the extent he offers legal conclusions concerning Defendant's compliance with 46 C.F.R. § 144.720, negligence, or breach of the duty to provide Plaintiff with a reasonably safe place to work. The motion is denied in all other respects.

### I. Background

On or about October 20, 2021, Plaintiff was serving as a crewmember of Defendant aboard the vessel, M/V Lucy Janoush.[5] The Complaint alleges that Plaintiff suffered an injury while

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 28.

[3] *Id.*

[4] Rec. Doc. 38.

[5] Rec. Doc. 1 at 1.

running out a racket.[6]  The Complaint states that the alleged injury was caused due to Defendant's

failure to provide safe workplace and seaworthy vessel.[7]

On March 28, 2024, Plaintiff filed a Complaint in this Court.[8]  On February 16, 2026,

Defendant filed the instant motion.[9]  On April 7, 2026, Plaintiff filed an opposition to the motion.[10]

On April 13, 2026, Defendant filed a reply memorandum in further response to the motion.[11]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion*

Defendant seeks to exclude certain opinions and anticipated trial testimony of Captain

Sutton.[12]  Defendant argues that Captain Sutton's opinion that Plaintiff, who was a deckhand at

the time of the incident, would have eventually obtained a U.S. Coast Guard issued pilot's license

sometime in the future but for the subject incident is speculative and is not based on reliable

principles and methodology.[13]  Defendant takes issue with Captain Sutton's opinion that the watch

rotation and banking assignments aboard the vessel violated a U.S. Coast Guard ("USCG")

regulation, arguing that this is question of law for the Court.[14]  Defendant further argues that

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] Rec. Doc. 28.

[10] Rec. Doc. 38.

[11] Rec. Doc. 39.

[12] Rec. Doc. 28-1 at 1.

[13] *Id.*

[14] *Id.*

Captain Sutton's opinion that fatigue contributed to Plaintiff's injuries will not assist the jury because it is within the jurors' common experience and knowledge.[15]  Defendant asserts that these opinions should be struck.[16]

**B.**  *Plaintiff's Arguments in Opposition to the Motion*

In opposition, Plaintiff argues that Captain Sutton's opinions are based upon his specialized knowledge derived from his 44 years of training and experience as a Master of Towing and an active captain and a U.S. Coast Goard Licensed Master Mariner.[17]  Plaintiff contends that Captain Sutton's opinion regarding Plaintiff obtaining his pilot's license was based upon Plaintiff's deposition testimony. [18]  According to Plaintiff, Defendant's concerns are not grounds for exclusion, rather they are grounds for cross-examination.[19]

Plaintiff argues Captain Sutton has sufficient qualifications to render an opinion concerning the watch rotation instituted by Captain "Bubba" Mitchell and the requirements of Subchapter M.[20] Plaintiff contends that Captain Sutton has sufficient qualifications and experience to opine as to whether a marine condition is USCG compliant. [21]  Plaintiff avers Captain Sutton's opinion concerning a Subchapter M violation is a reasonable conclusion based upon the evidence.[22]

---

[15] *Id.* at 7–8.

[16] *Id.* at 8.

[17] Rec. Doc. 38 at 1.

[18] *Id.* at 8.

[19] *Id.* at 9.

[20] *Id.*

[21] *Id.* at 10.

[22] *Id.*

Plaintiff argues Defendant has failed to establish that 46 C.F.R. § 144.720 is not applicable.[23] Plaintiff contends that Captain Sutton has "extensive backgrounds on both USCG high density passenger vessels and inspected towing vessels" and "USCG Subchapter M regulations" at 46 C.F.R., which includes the regulations concerning crew accommodations.[24] Plaintiff asserts Captain Sutton is qualified to give his opinion concerning Subchapter M requirements.[25]

According to Plaintiff, towboat work is not within the common knowledge of an average juror, and Captain Sutton's opinions will assist the jury.[26] Plaintiff avers Captain Sutton's testimony concerning the fatigue generated by failure to comply with safety rules and best practices in the industry will help the jury resolve what policies should have been implemented.[27] Plaintiff disputes Defendant's contention that fatigue is "common knowledge."[28] Plaintiff contends that maritime fatigue in the context of this case is technical and industry-specific, and these are not matters of every experience.[29] Plaintiff asserts that the motion should be denied.[30]

---

[23] *Id.*

[24] *Id.* at 10–11.

[25] *Id.* at 11.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 12.

[29] *Id.*

[30] *Id.* at 13.

## C. *Defendant's Arguments in Further Support of the Motion*

In further support of the motion, Defendant maintains that Captain Sutton's opinions regarding Plaintiff obtaining a pilot's license are speculative.[31] Defendant explains that 46 C.F.R. § 144.720 enumerates considerations for crew accommodations in the design and construction of a vessel, and there are no allegations that the vessel was faulty in design and construction.[32] Defendant contends that Captain Sutton's opinion that the vessel's watch rotation violated 46 C.F.R. § 144.720 is unfounded and should be stricken.[33]

Defendant reiterates that courts have found that a marine liability expert's opinion regarding fatigue playing a role in a plaintiff's injuries would not assist the jury and is commonly understood.[34] Defendant asserts that Captain Sutton's opinion that fatigue played a role in the incident should be stricken.[35]

## III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[36] Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education," may provide expert testimony when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the

---

[31] Rec. Doc. 39 at 1.

[32] *Id.* at 1–2.

[33] *Id.* at 2.

[34] *Id.*

[35] *Id.*

[36] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

evidence or to determine a fact in issue."[37]  For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony must be based upon sufficient facts or data,

(2) the testimony must be the product of reliable principles and methods, and

(3) the expert must reliably apply the principles and methods to the facts of the case.[38]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[39]  The court's gatekeeping function mostly involves a two-part inquiry.

First, the court must determine whether the expert testimony is reliable, which requires an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[40]  The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[41]  The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[42]  In analyzing reliability, *Daubert* instructs courts to consider (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to

---

[37] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[38] Fed. R. Evid. 702.

[39] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[40] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[41] *Seatrax*, 200 F.3d at 372.

[42] *See Daubert*, 509 U.S. at 590.

6

the technique; and (5) general acceptance within the scientific community.[43]

Second, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact in understanding the evidence.[44] The second inquiry primarily analyzes whether the expert testimony is relevant.[45]

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[46] A "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[47] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[48] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left to the jury's consideration."[49]

Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."[50] "The rule was enacted to change the old view that []

---

[43] *Id.* at 592–94. In *Kumho Tire*, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 141. The overarching goal "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

[44] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[45] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[46] *See Daubert*, 509 U.S. at 596.

[47] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[48] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[49] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[50] Fed. R. Evid. 704(a).

giving an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the jury."[51] The rule, however, "does not open the door to all opinions."[52] Witnesses may not "tell the jury what result to reach," nor may they "give legal conclusions."[53] The Fifth Circuit has explained that "the task of separating impermissible question which call for overbroad or legal responses from permissible questions is not a facile one," but one that requires courts to exclude questions or answers from experts that "would supply the jury with no information other than the expert's view of how its verdict should read."[54]

## IV. Analysis

Defendant seeks to exclude the following opinions of Captain Sutton: (1) Captain Sutton's opinion that plaintiff, who was a deckhand at the time of the incident, would have eventually obtained a U.S. Coast Guard issued pilot's license sometime in the future but for the subject incident; and (2) Captain Sutton's opinion that the watch rotation and bunking assignments aboard the subject vessel violated a U.S. Coast Guard regulation and caused plaintiff to become fatigued which contributed to the incident in question. The Court addresses each argument in turn.

### A.       *Opinion Regarding Plaintiff Obtaining a Pilot's License*

Captain Sutton opines that it is "highly likely" Plaintiff would have obtained his pilot's license had he not been injured. Specifically, in Captain Sutton's expert report, he concluded:

> Given that Mr. Davis was previously in his earlier life a USCG licensed towing vessel officer and now is required by the USCG additional recent maritime service in his personal work history / "sea service" for the United States Coast Guard to re-

---

[51] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[52] *Id.*

[53] *Id.* (citing *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir. 1981).

[54] *Id.*

issue his previously acquired mariner document. It's highly likely Mr. Davis would have achieved this personal goal had he not injured himself in the course of his employment.[55]

Defendant argues that Captain Sutton fails to explain how Plaintiff might satisfy the requirements set forth in 46 C.F.R § 10.227(i) "Re-issuance of expired credentials." Specifically, 46 C.F.R § 10.227(i) requires that a person whose license has been expired for more than twelve months "demonstrate professional knowledge by completing a course approved for this purpose" and "complete the practical demonstration of maneuvering and handling a towing vessel" before the license can be re-issued.[56] Defendant contends that this opinion is impermissible speculation and will confuse and mislead the jury.

In opposition, Plaintiff argues that Captain Sutton's opinion is not speculative, rather, it is based upon his experience as a USCG licensed Master Mariner, Plaintiff's prior Coast Guard licensure, industry promotion pathways, and Plaintiff's deposition testimony wherein he identifies the steps he was taking towards re-obtaining his pilot's license.

The Court finds that Defendant has not shown that exclusion of Captain Sutton's opinion is warranted. Defendant correctly notes that reissuance of Plaintiff's expired credentials was not automatic, and Captain Sutton's report does not expressly address each of the regulatory requirements set forth in 42 C.F.R. § 10.227(i). Nevertheless, this omission does not render his opinion wholly speculative.

Captain Sutton's opinion is based on more than the mere possibility that Plaintiff might have obtained the credentials. In reaching his conclusion, Captain Sutton considered Plaintiff's

---

[55] Rec. Doc. 28-2 at 7–8.

[56] 46 C.F.R. § 10.227(i).

prior experience as a Coast Guard-licensed towing vessel officer, the additional sea service necessary for reissuance, Plaintiff's work history, and Plaintiff's own deposition testimony. Taken together, this evidence provides a factual basis from which Captain Sutton, relying on his experience as a licensed Master Mariner and familiarity with Coast Guard credentialing requirements, could offer an opinion concerning Plaintiff's prospects of obtaining the credentials absent his injury.

To the extent Defendant argues that Captain Sutton failed to account adequately for the requirements imposed by 42 C.F.R. § 10.227(i), this criticism bears on the weight of the opinion rather than its admissibility. Defendant may explore on cross examination whether Plaintiff has completed, or could complete, the required courses and practical requirements. Captain Sutton, however, is not permitted to testify with certainty that the Coast Guard *would have* reissued Plaintiff's credential or offer a legal conclusion concerning Plaintiff's eligibility under the regulation.

**B.      *Opinion Regarding Fatigue and Failure to Train***

Captain Sutton also opines that the M/V Lucy Janoush's watch rotation was a violation of U.S. Coast Guard regulations and caused fatigue on the part of Plaintiff. In Captain Sutton's expert report, he concluded:

> Jantran failed to properly train Captain Mitchell and Captain Crone to follow the towing vessel inspection regulations known industry wide as "Sub-Chapter M" at 46 CFR [§] 144.720 and therefore The Captain failed to clearly understand that it was his responsibility as Master to follow the Federal regulations over his personal preferences.[57]

The expert report further explains that:

---

[57] Rec. Doc. 28-2 at 7.

With the more recent implementation of 46 CFR [§] 144.720 with the implementation of towing vessel inspection, Jantran still allowed its employee, Captain Mitchell to implement a watch rotation and subsequent room assignments onboard its vessel that prevented deckhand Joshua Davis and other crew members of the M/V Lucy Janoush from obtaining the much needed and proper rest during his assigned rest periods. Either way this issue is viewed, Jantran was unaware of the watch system setup by Captain Mitchell, or Jantran knowingly failed to correct their Captain Mitchell, or Jantran as a maritime employer was simply ignorant of the topic of mariner fatigue. Either way, Jantran, Inc. was negligent and failed to provide a reasonably safe place of employment for deckhand Joshua Davis. Failing to provide Joshua Davis with proper uninterrupted rest periods that maximized his ability to prevent worker fatigue.[58]

Defendant argues that Captain Sutton's reliance on 46 C.F.R. § 144.720 is erroneous, and his opinion will not assist the jury. In opposition, Plaintiff contends that 46 C.F.R. § 144.720 is applicable and towboat work is not within the common knowledge of the average juror.

With respect to the proper scope of expert testimony, "[a]n opinion is not objectionable just because it embraces an ultimate issue."[59] Nevertheless, an expert may never render conclusions of law.[60] Nor, may an expert go beyond the scope of his expertise in giving his opinion.[61]

As an initial matter, Defendant argues that 42 C.F.R. § 144.720 is inapplicable here because the statute does not concern vessel operations, manning, or watch rotations. The Court agrees. Part 144 concerns the "Construction and Arrangement" of vessels. Section 144.720 provides that "[t]he condition of the crew accommodations must consider the importance of crew rest" and identifies

---

[58] *Id.* at 4.

[59] Fed. R. Evid. 704(a).

[60] *Snap–Drape, Inc. v. Comm'r,* 98 F.3d 194, 198 (5th Cir. 1996).

[61] *First United Fin. Corp. v. U.S. Fid. & Guar. Co*., 96 F.3d 135, 136 (5th Cir.1996) (noting that expert testimony was properly rejected by the court because the "opinion of dishonesty goes beyond the scope of expertise.")

11

"vibration, ambient light, noise levels, and general comfort" as relevant considerations. The regulation further requires that "[e]very effort…be made to ensure that quarters help provide a suitable environment for sleep and off-duty rest." This language addresses whether the physical condition of crew quarters provides an environment conductive to rest. It does not prescribe particular watch rotations or regulate the assignment of crewmembers. Captain Sutton's opinion extends beyond the language of Section 144.720. Accordingly, Section 144.720 does not support Sutton's opinion that the challenged watch rotations or room assignments violated federal regulations.

Further, Captain Sutton's opinion is a conclusion of law. Captain Sutton's opinion interprets 46 C.F.R. § 144.720 and applies that regulation directly to the conduct of Defendant and Captain Mitchell. Specifically, Sutton opines that: (1) Defendant "failed to properly train"; (2) Captain Mitchell "failed" to follow federal regulations;(3) Defendant "knowingly failed to correct" Captain Mitchell; and (4) Defendant was "ignorant of the topic of mariner fatigue." Sutton then concludes that Defendant "was negligent and failed to provide a reasonably safe place of employment." These opinions constitute impermissible legal conclusions because they apply the governing legal standards to the facts and effectively instruct the jury that Defendant breached duties owed to Plaintiff.

As such, the Court excludes Captain Sutton's opinions to the extent he offers legal conclusions concerning Defendant's compliance with 46 C.F.R. § 144.720, negligence, or breach of the duty to provide Plaintiff with a reasonably safe place to work. Captain Sutton is permitted to offer admissible testimony regarding maritime industry practices, watch rotations, crew rest, or

other matters within his specialized knowledge, provided that he does not couch his opinions in legal conclusions or instruct the jury how the governing law should be applied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion[62] is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to Captain Sutton's opinions concerning Defendant's compliance with 46 C.F.R. § 144.720, negligence, or breach of the duty to provide Plaintiff with a reasonably safe place to work.   The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the Court excludes Captain Sutton's opinions to the extent he offers legal conclusions concerning Defendant's compliance with 46 C.F.R. § 144.720, negligence, or breach of the duty to provide Plaintiff with a reasonably safe place to work.

**NEW ORLEANS, LOUISIANA**, this ___12th___ day of August, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[62] Rec. Doc. 28.